UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Y.G.H.,<br><br>Petitioner,<br><br>v.<br><br>DONALD J. TRUMP, et al.,<br><br>Respondents. | No. 1:25-CV-00435-KES-SKO<br><br>**ORDER GRANTING RESPONDENTS' MOTION TO DISMISS**<br><br>Doc. 16 |

This case raises important questions concerning the lawfulness of the President's invocation of the Alien Enemies Act ("AEA"), 50 U.S.C. § 21, to direct the detention and removal of Venezuelan nationals alleged to be members of Tren de Aragua, and concerning the due process and statutory protections for an individual facing such a designation. Petitioner Y.G.H., a twenty-two-year-old native of Venezuela who denies being a member of Tren de Aragua, brings a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, Doc. 1 ("Petition"), challenging his potential removal from the United States under Presidential Proclamation No. 10903, 90 Fed. Reg. 13033 (2025) ("Proclamation") and the AEA.[1]  Petition

---

[1] The Petition names as respondents President Donald J. Trump; Orestes Cruz, Director of the San Francisco U.S. Immigration and Customs Enforcement Field Office; Attorney General Pamela Bondi; Secretary of the Department of Homeland Security Kristi Noem; Todd Lyons, Acting Director of ICE; Secretary of State Marco Rubio; Tonya Andrews, Facility Administrator of

1

¶¶ 2, 9–13; Doc. 20-1 ("Y.G.H. Decl.") ¶ 8.

But before the Court may consider these issues, it must address a threshold question: whether this is the correct tribunal to hear the Petition. At the time the Petition was filed, Y.G.H. was confined in the Northern District of Texas. Doc. 43 ("Khan Decl. II") ¶ 8. Generally, "a habeas petitioner challenging his present physical custody within the United States must file in the district in which he is detained at the time of filing and must name as respondent his 'immediate custodian.'" *Rumsfeld v. Padilla*, 542 U.S. 426, 449 (2004). The Government argues that, according to the immediate custodian and district of confinement rules, this Petition should be dismissed or transferred to the Northern District of Texas, where Y.G.H. was detained when his Petition was filed and where he remains held. Y.G.H. argues that this Court should hear his Petition because he was in an "unknown location" at the time of filing, as his counsel did not know where he was located while he was in transit on April 14, 2025, and that his Petition may therefore be heard in this district, where he was held from February 15 to April 14, 2025. Y.G.H. Decl. ¶¶ 6–13.

As addressed below, Y.G.H.'s counsel was aware from at least mid-March 2025 through April 13, 2025, that Y.G.H. was being held in Immigration and Customs Enforcement ("ICE") custody in the Eastern District of California. Doc. 20–2 ("Petty Decl.") ¶ 2. Following the issuance of the Proclamation, ICE publicly posted Y.G.H.'s photograph on social media in March 2025 with the labels "TdA Arrest" and "Tren de Aragua." Y.G.H. Decl. ¶ 8. Y.G.H.'s counsel became aware in mid-March 2025 of ICE's postings alleging Y.G.H.'s affiliation with Tren de Aragua and thereafter tracked Y.G.H.'s location daily on ICE's online detainee locator. Petty Decl. ¶ 2. On April 14, ICE transferred Y.G.H. to a detention facility in Texas. *See* Y.G.H. Decl. ¶¶ 6–13. Counsel for Y.G.H. was unaware of Y.G.H.'s location or destination only for approximately one day during his transfer. Petty Decl. ¶¶ 4–7. Counsel for Y.G.H. filed the Petition on the evening of April 14, 2025, Petty Decl. ¶ 6, but at that time Y.G.H. was already in the Northern District of Texas, Khan Decl. II ¶ 8. Y.G.H.'s counsel became aware by the

---

Golden State Annex Detention Facility; U.S. Department of Homeland Security ("DHS"), ICE, and the U.S. State Department (collectively "Government").

1  following day, April 15, 2025, of Y.G.H.'s new detention location in the Northern District of

2  Texas.[2]

3       For the reasons set forth below, the Court finds that it may not hear Y.G.H.'s Petition.  In

4  the circumstances of this case, there is no applicable exception to the district of confinement rule

5  and the Petition may not be heard in this district.  The Court therefore grants the Government's

6  motion.  Transfer of the Petition would be appropriate to remedy the procedural defect as to the

7  district of confinement.  *See* 28 U.S.C. § 1631; *Ozturk v. Hyde*, No. 25-1019, 2025 WL 1318154

8  (2d Cir. May 7, 2025), at *4–5.  However, at the hearing on May 5, 2025, counsel for Y.G.H.

9  requested that the Court dismiss the Petition rather than transfer it, if the Court determined it did

10 not have the authority to hear this case.  The Court will therefore dismiss this action without

11 prejudice in the interest of justice.  *See Caterat Sav. Bank v. Shushan*, 919 F.2d 225, 231 (3d Cir.

12 1990) (finding that "district court committed a clear error of law when it transferred the case over

13 [plaintiff's] objection"); *Ozturk*, 2025 WL 1318154, at *5 (noting district court may dismiss,

14 rather than transfer, petition where in interest of justice).

15 **I.    Relevant Facts and Procedural History**

16      Y.G.H. is a twenty-two-year-old native of Venezuela.  Y.G.H. Decl. ¶ 1.  On

17 September 13, 2023, he entered the United States under humanitarian parole that granted him

18 permission to remain in the country until at least April 8, 2025.  *Id.* ¶ 5.  On February 15, 2025,

19 following Y.G.H.'s arrest by local authorities on a matter on which he was ultimately released

20 without charges, ICE detained and held him at Golden State Annex ("GSA"), an immigration

21 detention facility located in McFarland, California, within the Eastern District of California, on

22 immigration proceedings under 8 U.S.C. § 1229a.[3]  *Id.* ¶¶ 6–7; Khan Decl. II ¶ 9.  The Petition

---

[2] At the May 5, 2025 hearing, Y.G.H.'s counsel confirmed that, by mid-day on April 15, 2025, the ICE online detainee locator reflected Y.G.H's new detention location in Texas.

[3] Y.G.H.'s initial immigration proceedings were before the Adelanto Immigration Court in Adelanto, California.  Doc. 20-2 ("Petty Decl.") ¶ 7.  On May 7, 2025, the Government filed a motion to change the venue of Y.G.H.'s immigration case from the Adelanto Immigration Court to the El Paso Immigration Court in El Paso, Texas.  Doc. 47 ¶ 3.  To petitioner's knowledge, as of May 20, 2025, the Adelanto Immigration Court had not issued a decision on the motion to change venue.  *Id.* ¶ 6.

1  challenges Y.G.H.'s potential removal solely on AEA-related grounds; it does not contest
2  Y.G.H.'s ongoing immigration proceedings or seek his release from detention in those
3  proceedings. Petition ¶ 14.
4       The Proclamation invoking the AEA states that it makes subject to detention and removal
5  "all Venezuelan citizens 14 years of age or older who are members of Tren de Aragua, are within
6  the United States, and are not actually naturalized or lawful permanent residents of the United
7  States." Proclamation, 90 Fed. Reg. 13033. On March 25, 2025, Y.G.H. became aware that ICE
8  had publicly posted a photograph of him on social media, with the text "TdA Arrest" and "Tren
9  de Aragua" overlaid on his photo on X. Y.G.H. Decl. ¶ 8. After Y.G.H.'s counsel became aware
10 of ICE's public allegation that Y.G.H. was a member of Tren de Aragua, counsel began to
11 routinely check Y.G.H.'s location via ICE's online detainee locator. Petty Decl. ¶ 2. Counsel
12 would often check twice a day, including on weekends, so that they could respond to any attempt
13 to summarily remove Y.G.H. *Id.* From March 25 through April 13, 2025, the ICE online
14 detainee locator accurately reflected that ICE was detaining Y.G.H. at GSA in McFarland,
15 California. *See id.* ¶¶ 2–3.
16      On April 7, 2025, the Supreme Court held that detainees challenging detention and
17 removal under the AEA "are entitled to notice and opportunity to be heard." *Trump v. J. G. G.*,
18 145 S. Ct. 1003, 1006 (2025). Specifically, the Court held that "AEA detainees must receive
19 notice after [April 7, 2025] that they are subject to removal under the Act," and such "notice must
20 be afforded within a reasonable time and in such a manner as will allow them to actually seek
21 habeas relief in the proper venue before such removal occurs." *Id.* As the Court held that such
22 challenges must be brought by habeas petition, and that the proper venue as to the named
23 plaintiffs in that case was in Texas, where the detainees were confined, it vacated a temporary
24 restraining order that the District Court for the District of Columbia had issued prohibiting the
25 removal of persons subject to the Proclamation. *Id.* at 1005–06.
26      In the early morning of April 14, 2025, guards came to Y.G.H.'s cell at GSA and removed
27 him and his possessions. Y.G.H. Decl. ¶¶ 10–11. Y.G.H. asked the guards for permission to
28 access his personal belongings, which included a printed notice he intended to provide to guards

in the event they tried to remove him from the United States. *Id.* Specifically, the notice read: "This is a notification establishing that if I am transferred to Guantanamo Bay, or if ICE plans to remove me to a third country where I am not a citizen, I wish to have legal representation. I wish for DHS/ICE to contact my attorneys." *Id.* The guards denied Y.G.H.'s request to access his personal belongings and the notice. *Id.* Similarly, the guards denied his request for information regarding where he was going or the reason for his transfer. *Id.*

After leaving GSA, the guards transported Y.G.H. to a holding cell. *Id.* ¶ 12. After about an hour in the cell, the guards drove Y.G.H. to Southern California Logistics Airport in Victorville, California. *Id.* ¶ 13. Victorville is in the Central District of California. Doc. 16 ("Motion") at 2 n.5; 28 U.S.C. § 84(c)(1). Y.G.H. departed from that airport at 9:10 a.m. PDT. Doc. 16-1 ("Khan Decl. I") ¶ 6. After a series of connecting flights, Y.G.H. arrived at the Abilene Regional Airport in Abilene, Texas at 7:10 p.m. CDT (5:10 p.m. PDT). *Id.* ¶ 6. He was then transferred to and booked into the Bluebonnet Detention Center ("Bluebonnet") in Anson, Texas, at 7:50 p.m. PDT, where he remains held. Khan Decl. II ¶ 8. Abilene and Anson are in the Northern District of Texas. *See* 28 U.S.C. 124(a)(3). The Government states that it transferred Y.G.H. to Bluebonnet "as part of an operation involving known and suspected members of Tren de Aragua." Khan Decl. II ¶ 6.

At or about 9:14 a.m. PDT, on April 14, 2025, while Y.G.H.'s transfer was underway, Y.G.H.'s counsel checked the ICE online detainee locator, which, inaccurately, still showed Y.G.H's location as at GSA. Petty Decl. ¶ 3. Later that day, at or around 3:01 p.m. PDT, counsel checked petitioner's location again. *Id.* ¶ 4. At this time, the locator did not list a location and instead stated, "CALL FIELD OFFICE Visitor Information" and listed a telephone number. *Id.* The locator also instructed that "Family members and legal representatives may be able to obtain additional information about this individual's case by contacting the ERO office: BAKERSFIELD, CA, IHP," and listed a phone number for that office. *Id.*

Counsel placed calls to both numbers at least four times between 3:01 p.m. and 5:00 p.m. PDT. *Id.* ¶ 5. When counsel called the Field Office number, the line automatically disconnected. *Id.* When counsel called the ERO Bakersfield number, an automated recording indicated that the

5

1  number had been disconnected or was no longer in service. *Id.* Counsel then called ICE's San
2  Francisco Enforcement and Removal Operations ("ERO") office, which manages the detainees at
3  GSA. *Id.* An automated recording at that number listed options for the caller to select, the first of
4  which related to information about a detainee's location. *Id.* Counsel selected that option, and a
5  recorded message directed the caller to ICE's online detainee locator, then disconnected. *Id.*
6  Around 3:30 p.m. PDT, after failing to make contact with the Government, counsel began
7  drafting the Petition. *Id.* The Petition was filed with this Court at 7:32 p.m. PDT on April 14,
8  2025. *Id.* At the time the Petition was filed, petitioner was already in the Northern District of
9  Texas and in the custody of ICE ERO Dallas officers. Khan Decl. II ¶ 8.
10     On April 15, 2025, at 2:28 a.m. PDT, Y.G.H.'s counsel filed a motion for temporary
11  restraining order. Doc. 4 ("TRO"). The Court issued an order that same day setting a hearing on
12  the TRO motion for April 16, 2025, and, to preserve the status quo, ordering respondents not to
13  remove petitioner from the United States pending further order of the Court, relying on the All
14  Writs Act, 28 U.S.C. § 1651. *Id.* At the hearing on April 16, the Court granted the parties'
15  request for an extended briefing schedule on the petitioner's TRO motion and the Government's
16  motion to dismiss, with the hearing scheduled for May 5, 2025.[4]
17     On April 21, 2025, the Government filed a motion to dismiss the case for lack of
18  jurisdiction or, alternatively, to transfer the case to the Northern District of Texas. Motion.
19  Y.G.H. filed an opposition on April 28, 2025, Doc. 20 ("Opp'n"), and the Government filed its
20  reply on May 2, 2025, Doc. 24 ("Reply"). The Court heard oral argument on the motion on
21  May 5, 2025. Doc. 27. On May 7, 2025, the Court ordered the Government to file an additional
22  declaration addressing why petitioner was transferred from California to Texas, whether and how
23  frequently such transfers occur, and where and under whose custody petitioner was held at the
24  time the Petition was filed. Doc. 30. The Court subsequently granted the parties' multiple

---

[4] The Government acknowledged at the April 16 hearing that the Court's April 16, 2025 Order preserving the status quo would remain in effect pending the Court's decision on its motion to dismiss. The Government has also stated that Y.G.H. "will not be removed under the AEA while his habeas petition is pending." Khan Decl. II ¶ 9.

6

requests to extend the deadlines to file declarations.  Docs. 31, 33, 37.  On May 16, 2025, respondents filed an additional declaration, Khan Decl. II, and on May 20, 2025, petitioner filed responsive declarations.  Docs. 45–48.[5]

## II. Discussion

The Government moves to dismiss Y.G.H.'s Petition or, alternatively, to transfer the Petition to the Northern District of Texas.  The Government argues that this Court lacks jurisdiction over Y.G.H. or his present custodian, and that under 28 U.S.C. § 2241(a) the Court may not hear Y.G.H.'s petition, as Y.G.H. was detained in Texas when the Petition was filed.  *See* Motion.  Y.G.H. argues that the Court may hear his Petition under what he identifies as the "unknown-location rule."  Opp'n at 10.  Y.G.H. asserts that he was in an "unknown location" at the time of the filing on April 14, 2025, as his counsel did not know where he was located while he was in transit, and that his Petition may therefore be heard in this district, from which he was removed.  *See* Opp'n.

### A. Habeas Corpus Jurisdiction

The Supreme Court has held that detainees challenging detention and removal under the AEA raise a core habeas claim and "are entitled to notice and opportunity to be heard." *J. G. G.*, 145 S. Ct. at 1005–06.  Specifically, the Court held that "AEA detainees must receive notice after [April 7, 2025] that they are subject to removal under the Act," and such "notice must be afforded within a reasonable time and in such a manner as will allow them to actually seek habeas relief in the proper venue before such removal occurs."  *Id.*

When a habeas petition under 28 U.S.C. § 2241 challenges a detainee's "present physical confinement," as here, the default rule is that the petition must be filed in the petitioner's district of confinement and must name his immediate custodian.  *Rumsfeld v. Padilla*, 542 U.S. 426, 435, 443 (2004); *Doe v. Garland*, 109 F.4th 1188, 1192 (9th Cir. 2024).  "In short, and putting the rules together, '[w]henever a § 2241 habeas petitioner seeks to challenge his present physical

---

[5] On May 21, 2025, Y.G.H. filed an unopposed motion for leave to file a statement regarding the decision in *Ozturk v. Hyde*, No. 25-1019, 2025 WL 1318154 (2d Cir. May 7, 2025).  Doc. 49. The Court grants that motion and has considered the filed statement at Doc. 49.

7

custody within the United States, he should name his warden as respondent and file the petition in the district of confinement.'" *Doe*, 109 F.4th at 1192 (quoting *Padilla*, 542 U.S. at 447); *see also J. G. G.*, 145 S. Ct. at 1005–06 ("For core habeas petitions, jurisdiction lies in only one district: the district of confinement."). This general rule is "derived from the terms of the habeas statute," *Padilla*, 542 U.S. at 447, which authorizes district courts to grant habeas relief "within their respective jurisdictions," 28 U.S.C. § 2241(a). The term jurisdiction in this context refers to "the sense that it is used in the habeas statute, 28 U.S.C. § 2241(a), and not in the sense of subject-matter jurisdiction of the District Court." *Padilla*, 542 U.S. at 434 n.7; *see also id.* at 453 (Kennedy, J., concurring) ("In my view, the question of the proper location for a habeas petition is best understood as a question of personal jurisdiction or venue."); *Ozturk*, 2025 WL 1318154, at *6.

As Y.G.H.'s claims for relief "necessarily imply the invalidity of [his] confinement and removal under the AEA," *J. G. G.*, 145 S. Ct. at 1005, his Petition is a core habeas petition. The Ninth Circuit has confirmed that both the "immediate custodian" and "district of confinement" rules apply to core habeas petitions challenging a petitioner's immigration detention under § 2241. *Doe*, 109 F.4th at 1193 ("The *Padilla* district of confinement and immediate custodian rules are firmly entrenched in the law of this and other circuits."); *see also J. G. G.*, 145 S. Ct. at 1005–06 (noting that habeas jurisdiction on petition challenging the AEA process would lie in district of confinement).

### 1. Immediate Custodian Rule

The Government argues the Petition must be dismissed as it fails to name Y.G.H.'s immediate custodian, but it is undisputed that there was no way for Y.G.H.'s counsel to know the identity of the immediate custodian at the time of filing on April 14. 28 U.S.C. § 2242 requires that a habeas petition name "the person who has custody over [the detainee] . . ., *if known*." As the Second Circuit noted in *Ozturk,* there is "no support in the law" for the proposition "that for some unspecified period of time after detention – seemingly however long the government chooses to take in transporting a detainee between states or between facilities – a detainee would be unable to file a habeas petition at all, anywhere." *Ozturk*, 2025 WL 1318154, at *6 (finding

government failed to show a likelihood of success on its argument that "unknown custodian exception" applied only where custodian's identity was a "prolonged secret"); *see also Khalil v. Joyce*, ___ F. Supp. 3d ___, 2025 WL 972959, at *28 (D.N.J. Apr. 1, 2025) ("*Khalil II*") (finding "unknown custodian exception" applied where petitioner's immediate custodian was unknown at time of filing).

In *Ozturk*, ICE did not allow the petitioner to contact counsel, and did not provide the petitioner's location to her counsel, for nearly 24 hours after her arrest in Massachusetts. *Ozturk*, 2025 WL 1318154, at *5. When the petitioner's attorney filed the habeas petition, the petitioner was being held in Vermont in the custody of an unknown custodian. *Id.* at *4–5. To the extent that "Öztürk's counsel did not know and could not find out who her immediate custodian was when her petition was filed," the court found that naming the Secretary of Homeland Security would "satisf[y] the statutory requirements." *Id.* at *5.

In *Khalil*, the court found the exception applied where, at the time the petition was filed, nothing in the record suggested that the petitioner's counsel could "have determined in real time that the Petitioner had been moved to New Jersey[.]" *Khalil II*, 2025 WL 972959, at *27. In that case, the ICE online detainee locator indicated that the petitioner was in New York, when in fact he was in New Jersey. *Id.* at *27. When the petitioner arrived in New Jersey, guards would not allow him to call his attorney. *Id.* Therefore, the petitioner's lawyer was "affirmatively led to believe that he was in New York — and because no phone calls were allowed, [his lawyer] could not undo the impression." *Id.* at *30. The court held that the unknown custodian exception applied and found that the petition reasonably named the Secretary of the Department of Homeland Security as a respondent. *Id.*

The unknown custodian exception was also applied in *Suri v. Trump*, No. 1:25-cv-480 (PTG/WBP), 2025 WL 1310745 (E.D. Va. 2025), where the petitioner was arrested outside his apartment in Virginia, taken to multiple locations in Virginia, and then flown to Louisiana within 24 hours of his arrest. *Id.* at *8. At the time the petition was filed, "petitioner's immediate custodian was unknown." *Id.* The petitioner's attorney diligently checked the ICE online detainee locator for information on the petitioner's location beginning within hours of his arrest,

9

1  to no avail. *Id.* Finding that "it is not clear how any other diligent attorney could have known
2  that [the petitioner] was in Louisiana at the time he filed the petition[,]" the court found the
3  petitioner reasonably named the Secretary of the Department of Homeland Security as a
4  respondent. *Id.*

5  Here, it is undisputed that Y.G.H.'s counsel was unaware of, and could not have known,
6  the identity of Y.G.H.'s immediate custodian at the time of filing on April 14, 2025, despite
7  diligent attempts on April 14 to ascertain Y.G.H.'s location before filing. ICE did not inform
8  Y.G.H. where he was being transferred, and he was unable to notify his counsel on April 14 of
9  the transfer. Y.G.H. Decl. ¶¶ 10–11. The ICE online detainee locator also initially led counsel to
10 believe that petitioner was still in the Eastern District of California on April 14. At 9:14 a.m.
11 PDT on April 14, when counsel checked petitioner's location on the ICE online detainee locator,
12 it still listed Y.G.H.'s location as at GSA. Petty Decl. ¶ 3. At that time, the plane carrying
13 Y.G.H. had already departed the airport in Victorville, California four minutes earlier, at
14 9:10 a.m. PDT. Khan Decl. I ¶ 6. Later that afternoon, at around 3:01 p.m. PDT, the ICE online
15 detainee locator listed no location for petitioner and instead instructed counsel to contact ERO's
16 offices by telephone. Petty Decl. ¶ 4. But when counsel attempted to reach ERO at the listed
17 numbers, neither number worked. *Id.* ¶ 5. Meanwhile, Y.G.H. arrived in Texas at 5:10 p.m.
18 PDT. Khan Decl. I ¶ 6.

19 At the time Y.G.H.'s counsel filed the Petition, counsel could not and did not know the
20 identity of Petitioner's immediate custodian, despite reasonable efforts to obtain that information.
21 The Petition therefore appropriately named the Secretary of the Department of Homeland
22 Security and the Acting Director of ICE as respondents. *See* Petition. However, that does not
23 resolve which district may consider the Petition. Absent an exception to the district of
24 confinement rule, once Y.G.H.'s place of confinement at the time of filing became known, that is
25 the district in which his Petition must be heard. *See Demjanjuk v. Meese*, 784 F.2d 1114, 1116
26 (D.C. Cir. 1986) (stating that D.C. Circuit would be "divested of jurisdiction" over petition if
27 petitioner's location became known); *Roman v. Ashcroft*, 340 F.3d 314, 325 (6th Cir. 2003)
28 (noting unknown custodian exception was not meant to extend "any further than necessary to

1   preserve [petitioner's] right to petition for habeas corpus relief . . ."). The courts in *Ozturk* and
2   *Khalil* found as much. In both cases, the courts applied the unknown custodian exception in
3   holding that petitioner could name a respondent other than his or her immediate custodian, but
4   they found the habeas petitions were properly heard in the district where the petitioner was
5   detained when the petition was filed—New Jersey and Vermont, respectively. *See Khalil II*, 2025
6   WL 972959, at *35; *Ozturk v. Trump*, ___ F. Supp. 3d ___, 2025 WL 1145250, at *9–10 (D. Vt.
7   Apr. 18, 2025) ("*Ozturk II*").

   **2.   District of Confinement Rule**

9   As Y.G.H. was detained in Texas when his counsel filed his Petition in this district, the
10  Petition was not filed in his district of confinement. The "general rule [is] that for core habeas
11  petitions challenging present physical confinement, jurisdiction lies in only one district: the
12  district of confinement." *Padilla*, 542 U.S. at 443. When Y.G.H.'s petition was filed, that district
13  was the Northern District of Texas. *See Ozturk*, 2025 WL 1318154, at *4 (finding proper district
14  for habeas jurisdiction was Vermont, where petitioner was detained in transit at time petition was
15  filed in Massachusetts). In *Ozturk*, 2025 WL 1318154, the Second Circuit considered a habeas
16  petition filed on behalf of a petitioner who was taken into custody in Massachusetts but
17  transferred shortly thereafter, and, unbeknownst to the petitioner's counsel, was detained in
18  Vermont at the time of filing. The court noted Vermont was "the *only* district in which the
19  petition could have been brought at the time of filing." *Id.* at *4 (emphasis in original).

20  Y.G.H. argues that his Petition may nonetheless be heard in this district because, at the
21  time of filing on April 14, 2025, Y.G.H. was in transit and was in an "unknown location." He
22  relies on the Supreme Court's statement in *Padilla* that "[w]hen, . . . a prisoner is held in an
23  undisclosed location by an unknown custodian, it is impossible to apply the immediate custodian
24  and district of confinement rules." *Padilla*, 542 U.S. at 450 n.18. Y.G.H. argues that this
25  exception allows "the district court from whose territory the petitioner had been removed" to
26  exercise jurisdiction. Opp'n at 10 (quoting *Padilla*, 542 U.S. at 454 (Kennedy, J., concurring)).
27  He asserts that his counsel did everything reasonably possible to ascertain his location, including
28  checking the ICE online detainee locator twice a day, including on weekends, and attempting to

11

1  contact the ERO field office, as directed by the website, on the day of his transfer to Texas. *Id.*
2  Y.G.H. asserts that he could not have been expected to file in Texas, on April 14, 2025, as his
3  counsel could not have known at that time that petitioner had been transferred there that day. *Id.*

Petitioner's argument relies on a footnote in *Padilla* that references and distinguishes *Demjanjuk v. Meese*, 784 F.2d 1114 (D.C. Cir. 1986).[6]  In *Demjanjuk*, the petitioner was in the custody of the United States Marshals and was about to be extradited when he sought a writ of habeas corpus. *Id.* at 1115. Significantly, petitioner was being held in a confidential location unknown even to his attorneys. *Id.* In such circumstances, "petitioner's attorneys [could not] be expected to file in the jurisdiction where petitioner is held." *Id.* at 1116. As it was "essential that petitioner not be denied the right to petition for a writ of habeas corpus," Judge Bork found it appropriate to treat the Attorney General of the United States as the custodian and found that, in the absence of any other known venue, venue in the D.C. Circuit was appropriate. *Id.*

Y.G.H. argues that this exception applies to him because, during the limited period of his one-day transfer on April 14, 2025, from a known location in California to a known location in Texas, his location was not publicly available and ICE did not provide Y.G.H. with prior notice of his transfer. Y.G.H. acknowledges he was detained at a known location in this district, GSA, from February 15, 2025 to the early morning of April 14, 2025. Y.G.H. Decl. ¶¶ 6–13. Y.G.H.'s counsel acknowledge they were aware of his location at GSA from at least mid-March and that they confirmed his location daily on ICE's online detainee locator, including on weekends. Petty Decl. ¶ 2. His counsel was also aware since mid-March 2025 that ICE had publicly accused Y.G.H. on social media of being a member of Tren de Aragua. *Id.* Additionally, Y.G.H.'s counsel acknowledged at the May 5, 2025 hearing that, by April 15, 2025, within 24 hours of his transfer, ICE's online detainee locator reflected Y.G.H.'s new detention location at Bluebonnet.

Y.G.H. does not point to any case in which a court applied his proposed "unknown

---

[6] In *Padilla*, the Court acknowledged the *Demjanjuk* exception, while finding that it did not apply to the facts before it. *Padilla*, 540 U.S. at 450 n.18. The Court stated that "[w]hen, as in [*Demjanjuk*], a prisoner is "held in an undisclosed location by an unknown custodian, it is impossible to apply the immediate custodian and district of confinement rules." *Id.* The Court also noted that *Padilla* did not present a situation in which "the Government 'shrouded' [the petitioner's] whereabouts in secrecy." *Id.* at 449 n.17.

12

1  location" rule in the context of a detainee's relatively brief unknown location status during a
2  transfer between known detention locations.  This is not a case in which "the Government
3  'shrouded' [the petitioner's] whereabouts in secrecy" *Padilla*, 540 U.S. at 449 n.17, or concealed
4  the petitioner's location in the period after his arrest, *Ozturk*, 2025 WL 1318154, at *4 ("Any
5  confusion about where habeas jurisdiction resides arises from the government's conduct during
6  the twenty-four hours following Öztürk's arrest.").

7       Y.G.H. also cites Justice Kennedy's concurrence in *Padilla*, which was joined by Justice
8  O'Connor, in support of his argument that this Court may retain jurisdiction over the Petition.
9  Opp'n at 10.  Justice Kennedy's concurrence "would acknowledge an exception" to the
10  immediate custodian and district of confinement rules "if there is an indication that the
11  Government's purpose in removing a prisoner were to make it difficult for his lawyer to know
12  where the habeas petition should be filed, or where the Government was not forthcoming with
13  respect to the identity of the custodian and the place of detention." *Id.* at 454.  For example, "if
14  the Government had removed [the petitioner] from [the district] but refused to tell his lawyer
15  where he had been taken," or "if the Government did inform the lawyer where a prisoner was
16  being taken but kept moving him so a filing could not catch up to the prisoner . . . habeas
17  jurisdiction would lie in the district or districts from which he had been removed." *Id.*  Although
18  these proposed exceptions are in a concurring opinion, *Padilla* was a 5-4 decision, and Justice
19  Kennedy and O'Connor's votes were necessary to the formation of the majority.  *See Schmitz v.*
20  *Zilveti*, 20 F.3d 1043, 1045 (9th Cir. 1994) (noting that a concurrence by Justice White was given
21  "particular weight" where the concurring justices' votes were necessary to the formation of a
22  majority).  Additionally, "the majority in *Padilla* did not express disagreement with this exception
23  proposed by the concurrence, but rather noted that the particular facts of Padilla's case did not
24  warrant its invocation." *Ozturk v. Trump*, ___ F. Supp. 3d ___, 2025 WL 1009445, at *6 (D.
25  Mass. Apr. 4, 2025) (*Ozturk I*).

26      However, even assuming Justice Kennedy's proposed exceptions are applicable law,
27  Y.G.H. has failed to establish that he would meet the exceptions.  Y.G.H. does not allege or
28  establish that ICE transferred him on April 14 with the purpose to make it difficult for his counsel

to know where to file a habeas petition, or that the Government failed to promptly disclose his location following the transfer. In fact, Y.G.H.'s counsel confirmed they became aware of his new location the following day, on April 15. Nor did the Government quickly transfer Y.G.H. to another district following his arrest or repeatedly move Y.G.H. from one district to another to prevent a filing from catching up to his location.[7]

Y.G.H. was detained in this district from February 15, 2025 to the early morning of April 14, 2025. Y.G.H.'s counsel knew from mid-March 2025 that ICE had publicly labeled Y.G.H. on social media as a "Tren de Aragua" arrest and that he was detained in the Eastern District of California. The Petition could thus have been brought in this district prior to Y.G.H.'s transfer on April 14, 2025. Additionally, ICE disclosed Y.G.H.'s new location in Texas on April 15, within a day of his transfer, and Y.G.H. has remained in the Northern District of Texas since that date. Aside from the brief period of Y.G.H.'s transfer on April 14, 2025, Y.G.H.'s counsel has been aware of his detention location from mid-March through the present. While it was not necessarily clear prior to the Supreme Court's April 7, 2025 decision in *J. G. G.*, 145 S. Ct. 1003, 1005–06 (2025), that a challenge to removal under the AEA must be brought in a habeas petition, counsel for Y.G.H. could have filed the Petition between April 7 and April 13, 2025.

At the May 5, 2025 hearing, Y.G.H. contended, and the Government agreed, that ICE's social media posts did not constitute a formal designation of Y.G.H.'s affiliation with Tren de Aragua. Y.G.H.'s counsel noted that raised a potential issue as to Y.G.H.'s standing to file a habeas petition prior to April 14, 2025. But by mid-March 2025, Y.G.H. faced a "substantial risk" of imminent harm sufficient to confer standing to bring his Petition. "An allegation of

---

[7] In contrast, in *Suri*, which adopted the reasoning of Justice Kennedy's concurring opinion in *Padilla* in finding habeas jurisdiction in the district from which the petitioner had been removed, the government moved the petitioner between four different holding sites within hours of his arrest, provided misleading information concerning his location, and flew him out of state within a day of his arrest. *See Suri*, 2025 WL 1310745, at *2–3. The court found an inference that the government's goal was to make it difficult for the petitioner's counsel to file a petition before the petitioner was transferred to the government's chosen forum. *See id.* at 11, 13. Y.G.H. does not present evidence of such circumstances here.

future injury may suffice [to establish standing] if the threatened injury is certainly impending or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (permitting pre-enforcement review where threatened enforcement is sufficiently imminent). In March 2025, ICE publicly alleged that Y.G.H. was affiliated with Tren de Aragua, posting his photo on social media with "Tren de Aragua" and "TdA Arrest" superimposed on it. Y.G.H. Decl. ¶ 8. On March 15, 2025, the Government removed at least 137 Venezuelan nationals to El Salvador pursuant to the Proclamation. Petition ¶ 5. Y.G.H. thus faced a substantial risk of impending designation under the AEA and a substantial risk of harm resulting from such a designation. *See D.B.U. v. Trump*, 2025 WL 1163530, at *6 (D. Colo. Apr. 22, 2025) (finding that petitioners not formally designated for removal under AEA, but whom ICE accused in public communications of "attending a Tren de Aragua party," had shown "substantial risk that the harm of being subject to the Proclamation will arise—despite their current designation as individuals who do not fall under it—such that they have met their standing burden").

Nor is there evidence that the Government "refuse[d] to tell [petitioner's] lawyer where he had been taken." *Padilla*, 542 U.S. at 454; *see also Sow v. Whitaker*, 18-CV-11394 (GBD) (RWL), 2019 WL 2023752, at *5 (S.D.N.Y. May 8, 2019) (declining to apply Justice Kennedy's exception when no facts suggested Government refused to tell petitioner's lawyer where he had been taken). Y.G.H. does not allege the Government misled his counsel concerning his location. While Y.G.H. emphasizes counsel's inability to reach someone at ERO on April 14 on the numbers listed on ICE's online detainee locator, Opp'n at 13, by the time counsel attempted to call the ERO numbers, it was nearly six hours since Y.G.H.'s plane had departed from Victorville. Khan Decl. I ¶ 6.

Additionally, while petitioner attaches declarations from attorneys familiar with detainees at GSA and who attest that, with a limited exception, they have not known ICE to transfer individuals from GSA to Bluebonnet, Docs. 20-3, 48, the Government asserts that ICE "regularly conducts flights, transporting detainees across the United States, including between California and Texas," Khan Decl. II ¶ 5. And 8 U.S.C. § 1231(g)(1) "gives both 'responsibility' and 'broad discretion' to the Secretary 'to choose the place of detention for deportable aliens.'" *Geo Group,*

15

*Inc. v. Newsom*, 50 F.4th 745, 751 (9th Cir. 2022) (citing *Comm. Of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1440 (9th Cir. 1986), *amended by* 807 F.2d 769 (9th Cir. 1986)).

Petitioner contends that a finding that this Court lacks jurisdiction would sanction "a brief period of blacking out access to habeas corpus" during a detainee's transfer. Opp'n at 13–14. To the contrary, the Court agrees that "there is no gap in the fabric of habeas," *id.* at 12 (citing *Khalil II*, 2025 WL 972959, at *37); however, the issue is not *whether* Y.G.H. could bring a habeas petition on April 14, but *where* his Petition must be heard. In the present circumstances, Y.G.H. has failed to establish an exception to the district of confinement rule and the appropriate remedy is transfer of the Petition to the district of confinement at the time of filing, or dismissal of the petition if plaintiff does not seek such transfer. *See Ozturk I*, 2025 WL 1009445, at *10–11; *Khalil v. Joyce*, ___ F. Supp. 3d ___, 2025 WL 849803, at *11–14 (S.D.N.Y. Mar. 19, 2025).

The Court concludes that under the district of confinement rule, it does not have jurisdiction under § 2241(a) over Y.G.H.'s Petition. *See J. G. G.*, 145 S. Ct. at 1005–06; *Padilla*, 542 U.S. at 447; *Doe*, 109 F.4th at 1192.

**B.      Dismissal or Transfer to the Northern District of Texas**

The Government moves to dismiss the Petition, or alternatively, to transfer it to the Northern District of Texas, where petitioner was held at the time the Petition was filed. Motion at 1. At the May 5, 2025 hearing, Y.G.H.'s counsel requested that the Petition be dismissed, rather than transferred, if the Court did not find that it may hear the Petition.

The Court will defer to Y.G.H.'s request that the Court dismiss his case rather than transfer it to another forum. *See Caterat Sav. Bank v. Shushan*, 919 F.2d 225, 231 (3d Cir. 1990) (finding that "district court committed a clear error of law when it transferred the case over [plaintiff's] objection," where plaintiff "was willing to have [the] action dismissed in the district court"); *see also Ozturk*, 2025 WL 1318154, at *5 (noting district court may dismiss, rather than transfer, petition where in interest of justice). There is no evident prejudice that would outweigh Y.G.H.'s stated preference for dismissal of the Petition. Y.G.H. is represented by competent counsel who can promptly refile a habeas petition in the Northern District of Texas, if and when counsel determines that to be warranted. Y.G.H. also appears to be covered by the Supreme

Court's order temporarily enjoining removal of AEA detainees held in the Northern District of Texas. *See A.A.R.P. v. Trump*, 605 U.S. ___, 2025 WL 1417281, at *4 (May 16, 2025).

While transfer to the Northern District of Texas would otherwise be appropriate, *see* 28 U.S.C. § 1631, the Court finds that it is in the interest of justice to defer to petitioner's request and will dismiss the Petition without prejudice rather than transfer it.[8]

### III. Conclusion

Accordingly:

1. The Government's motion to dismiss, Doc. 16, is GRANTED;
2. The Petition, Doc. 1, is DISMISSED WITHOUT PREJUDICE;
3. Petitioner's motion for temporary restraining order, Doc. 4, is DENIED as moot;
4. The Court's April 15, 2025 Order, Doc. 9, is DISSOLVED;
5. The Clerk of Court is directed to CLOSE this case.
6. This Order shall be stayed until June 2, 2025, to permit an application for a stay pending appeal.

IT IS SO ORDERED.

Dated:   May 27, 2025

UNITED STATES DISTRICT JUDGE

---

[8] At the May 5, 2025 hearing, Y.G.H.'s counsel requested that the Court maintain in place pending appeal its April 15, 2025 Order preserving the status quo, Doc. 9, if the Petition were dismissed. But as no case will remain pending following the dismissal of the Petition, the April 15 Order must be dissolved. *See Clinton v. Goldsmith*, 526 U.S. 529, 534–35 (1999) ("[T]he express terms of the [All Writs] Act confine the power of [a court] to issuing process 'in aid of' its existing statutory jurisdiction; the Act does not enlarge that jurisdiction."). The Court will, however, stay this Order briefly to permit time for an application for a stay pending appeal.